# In the United States District Court for the Eastern District of Louisiana

M/G Transport Services, LLC,
formerly known as M/G Transport
Services, Inc.,

CIVIL ACTION NO.:

SEC:

*Plaintiff*

MAG. DIV.:

v.

The Northern Assurance Company of
America, International Marine
Underwriters, a division of One
Beacon Insurance Group, Ltd.,
National Casualty Company, and
Indemnity Insurance Company
of North America,

*Defendants*

## COMPLAINT

Plaintiff M/G Transport Services, LLC, formerly known as M/G Transport Services, Inc. ("M/G"), by its attorneys, brings this Complaint.

1. M/G is a Delaware Limited Liability Company that until April 3, 2008 was known as M/G Transport Services, Inc. The principal place of business for M/G is 4101 Founders Boulevard - Suite 100, Batavia, OH 45103. M/G is generally engaged in the inland river towing industry.

2. M/G owns and operates barges on the navigable inland waterways, including the Mississippi and Ohio River Systems.

3. Defendant The Northern Assurance Company of North America ("Northern") is an insurance company with its principal place of business in Massachusetts. Northern conducts business in Louisiana.

4. Defendant International Marine Underwriters, a division of One Beacon Insurance Group, Ltd. ("IMU") is an insurance company with its principal place of business in New York. IMU does business in Louisiana with offices at 1100 Poydras Street, Suite 1220, New Orleans, Louisiana 70163-1220.

5. Defendant National Casualty Company ("NCC") is an insurance company with its principal place of business in Arizona. NCC conducts business in the State of Louisiana.

6. Defendant Indemnity Insurance Company of North America ("IICNA") is an insurance company with its principal place of business in Pennsylvania. IICNA conducts business in the State of Louisiana.

7. Northern, IMU, NCC, and IICNA are collectively referred to herein as "Insurers".

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §1333 as a matter of Admiralty and Maritime Jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and supplemental jurisdiction pursuant to 28 USC §1367 over the Louisiana statutory bad faith claims.

9. Venue is proper in this district as events pertaining to M/G's claims arose here.

**FACTS**

**A.**

**The January 2, 2008 sinking and subsequent raising of Barge KMM-103B**

10. At all material times, M/G was the owner of Barge KMM-103B, an open hopper barge.

11. Barge KMM-103B sank on January 2, 2008 while fleeted at International Marine Terminal, approximately Mile 58 Right Descending Bank, Lower Mississippi River.

12. Upon sinking, Barge KMM-103B came to rest on a concrete revetment owned and operated by the United States Army Corps of Engineers at approximately Mile 57.4 Right Descending Bank Lower Mississippi River, Myrtle Grove, LA.

13. The sunken Barge KMM-103B constituted a wreck.

14. The location of sunken Barge KMM-103B on the revetment constituted an obstruction and/or a wreck.

15. As confirmed by letter of October 15, 2009 from the United States Army Corps of Engineers, M/G was obligated to remove Barge KMM-103B from the revetment and M/G is responsible for any damage to the revetment caused by Barge KMM-103B. Attached and marked Exhibit "A" is a true copy of the October 15, 2009 letter from the United States Army Corps of Engineers to M/G.

16. M/G undertook the raising of Barge KMM-103B to remove it from the revetment, completing the salvage operation on December 20, 2008.

17. Upon the raising of Barge KMM-103B, it was determined that Barge KMM-103B was a total loss. The Insured Value of Barge KMM-103B on January 2,

2008 was $50,000. Upon being raised, Barge KMM-103B was sold for scrap value of $18,000, making the insured loss of the barge $32,000.

19. As the result of the sinking and raising of Barge KMM-103B M/G incurred the following salvage expenses (collectively "the KMM-103B Salvage Expenses"):

| | |
|---|---:|
| Salvage Costs | $650,000 |
| Damage Survey | 45,600 |
| Total KMM-103B Salvage Expenses | $695,600 |

### B.

### The June 24, 2008 damage to Barge M/G 274 and the subsequent repair of Barge M/G-274

19. At all material times, M/G was the owner of Barge M/G-274.

20. On or about June 24, 2008 Barge M/G-274 was damaged while in the fleet at Turn Services, Inc. at approximately Mile 57 Left Descending Bank, Lower Mississippi River.

21. The total cost of repairs and related expenses such as surveying and barge movement costs to facilitate repairs to Barge M/G-274 was $33,947.25. (The "Barge M/G-274 Repair Expenses".)

### C.

### The September 1, 2008 Hurricane Gustav Damage to Numerous Barges

22. On or about September 1, 2008 M/G was the owner of numerous barges that were sunk, damaged, or in imminent peril of sinking as the result of Hurricane Gustav.

23. As the result of the damages to its barges and/or the imminent peril of its barges sinking, M/G incurred expenses for salvage, cover, pumping, repairs, survey, and other costs to safeguard and recover the barges. Attached and marked Exhibit "B" is a summary of the M/G barges damaged by Hurricane Gustav and resulting expenses incurred by M/G, $239,550.25 of which remains unpaid. (The "Hurricane Gustav Expenses")

### D.

### The September 13, 2008 Hurricane Ike Stranding of Barge M/G 206 and its Subsequent Recovery

24. On or about September 13, 2008 M/G was the charterer of Barge M/G 206 and was responsible for all maintenance and repairs to Barge M/G 206.

25. On or about September 13, 2008, Barge M/G 206 was stranded as the result of Hurricane Ike.

26. M/G retained a salvor to safeguard and recover Barge M/G 206.

27. The cost of recovering Barge M/G 206 was $307,520.17. (The "Hurricane Ike Recovery Expenses")

### E.

### The Joint Policy Insuring M/G

28. From December 31, 2007 through December 31, 2008 M/G and its fleet of barges were insured by the Insurers under a Primary Marine Policy, which provided insurance for various marine related insurance coverages, including Hull and Machinery Coverage and Protection and Indemnity Coverage.

29. The coverage provided by insurers from December 31, 2007 through December 31, 2008 to M/G Transport Services, Inc. (now known as M/G Transport

Services, LLC.) was pursuant to the terms of Joint Policy #HPI-071231 (herein the "Joint Policy")

30. Effective April 3, 2008, the Insurers issued Endorsement No. 11 to the Joint Policy which, *inter alia,* added M/G Transport Services, LLC (formerly known as M/G Transport Services, Inc.) and others to the Joint Policy as new Named Assureds and assigned Joint Policy Number #HPI-08-081231 to the policy for the new Named Assureds. Attached and marked Exhibit "C" is a true copy of the Joint Policy.

31. Under the terms of the Joint Policy, all of the barges referenced above were identified on a Schedule of Vessels and Insured Values as of December 31, 2007. The schedule of Vessel Insured Values was modified, effective April 3, 2008.

32. Under the terms of the Joint Policy, the Insurers respectively subscribed to severally, but not jointly, insure various percentages of the coverages provided to M/G. Northern and IMU agreed to insure sixty (60%) percent of the coverages. NCC and IICNA each agreed to insure twenty (20%) percent of the coverages, respectively.

33. Under General Condition 19 of the Joint Policy NCC and IICNA, as minority subscribers, agreed to follow the claims settlement decisions of NCC and IMU:

> **SECTION A – GENERAL CONDITIONS INCLUDING ASSUREDS AND LOSS PAYEES**
>
> ...
>
> **19.   FOLLOWING CLAUSE**
>
> This insurance is subject to the same terms and conditions as per the Northern Assurance Company of America (International Marine Underwriters) and subscribers to this policy agree to follow Northern Assurance Company of America (International Marine Underwriters) with or without previous notice in regard to alteration, extension, addition, endorsement, cancellation, attachment and expiry dates, and also in regard to survey and settlement of claims.

**THIS SECTION IS ATTACHED TO AND MADE PART OF THE HULL & MACHINERY, PROTECTION & INDEMNITY, SHIP REPAIRER'S AND LANDING OWNER'S LIABILTY POLICIES (SECTION B THROUGH E INCLUSIVE)**

34. IMU is affilited with Northern. IMU provides underwriting and claims management services to Northern with regard to the Joint Policy.

35. IMU serves as claims manager with respect to the Joint Policy.

36. In underwriting the terms of the Joint Policy, the Insurers elected to include Special Conditions B and C. These Special Conditions respectively contained provisions that expanded and increased the coverage provided to M/G beyond the coverages otherwise provided by the American Institute Hull Clauses (June 2, 1977) and the SP-23 (Revised 1/56) Protection and Indemnity Form.

37. Joint Policy Special Condition Section C – Protection and Indemnity 1. Removal of Wreck replaced Clause (7) and Clause (7)(a) of the "Removal of Wreck" Clause found in the SP-23 (Revised 1/56) Protection and Indemnity Form with a provision that expanded and increased the coverage provided to M/G:

<u>SECTION C – PROTECTION & INDEMNITY</u>

1. <u>REMOVAL OF WRECK</u>

It is understood and agreed that Clause (7) "Removal of the Wreck" and 7(a) of the printed policy form is deleted and the following substituted therefore:

"Cost or expenses of, or incidental to, the removal, destruction or abatement of, or any attempt or failure or neglect to remove, destroy or abate any obstruction or any wreck and/or their cargoes or any hazard resulting therefrom; provided, however, that there shall be deducted from such claims the value of any salvage or proceeds recovered therefrom".

38. The Sue and Labor Clause of the Joint Policy's Hull & Machinery Coverage (Lines 144-157) provides in relevant part:

> **SUE AND LABOR**
>
> And in the case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the Vessel, or any part thereof, without prejudice to the charges whereof the Underwriters will contribute their proportion as provided below.
>
> ...
>
> If claim for Total Loss is admitted under this Policy and sue and labor expenses have been reasonably incurred in excess of any proceeds realized or value recovered, the amount payable under this Policy will be the proportion of such excess that the amount insured hereunder (without deduction for loss or damage) bears to the Agreed Value or to the sound value of the Vessel at the time of the accident, whichever value was greater; provided always that Underwriters' liability for such expenses shall not exceed their proportionate part of the Agreed Value. The foregoing shall also apply to expenses reasonably incurred in salving or attempting to salve the Vessel and other property to the extent that such expenses shall be regarded as having been incurred in respect of the Vessel.

39. On January 8, 2008, M/G provided the Insurers with notice of the sinking of Barge KMM-103B and subsequently requested payment from the Insurers for the KMM-103B Salvage Expenses and for the value of Barge KMM-103B.

40. The Insurers have refused to pay M/G the amounts it is owed under the Joint Policy for the KMM-103B Salvage Expenses and for the value of Barge KMM-103B.

41.     On or about July 1, 2008, M/G provided the Insurers with notice of the damage to Barge M/G-274 at Turn Services and subsequently requested payment from the Insurers for the Barge M/G-274 Repair Expenses.

42.     The Insurers have refused to pay M/G the amounts it is owed under the Joint Policy for the Barge M/G-274 Repair Expenses.

43.     Or about September 1, 2008, M/G provided the Insurers with notice that Hurricane Gustav sunk or damaged certain M/G Barges and subsequently requested payment from the Insurers for the Hurricane Gustav Repair Expenses.

44.     The Insurers have refused to pay M/G for all amounts included in the Hurricane Gustav Repair Expenses. The Insurers still owe M/G $239,550.25 in Hurricane Gustav Repair Expenses.

45.     On or about September 13, 2008, M/G provided the Insurers with notice that Hurricane Ike damaged and/or stranded certain M/G Barges and subsequently requested payment from the Insurers for the Hurricane Ike Recovery Expenses.

46.     The Insurers have paid M/G a portion of the Hurricane Ike Recovery Expenses, but still owe M/G $9,803 in Hurricane Ike Recovery Expenses.

### COUNT 1

**Failure to Pay for KMM-103B Salvage Expenses
Pursuant to Joint Policy Special Condition C – 1**

47.     M/G incorporates Paragraphs 1-46 of this Complaint by reference.

48.     Under the terms of Special Condition Section C – Protection and Indemnity 1. Removal of Wreck, M/G is insured under the Protection and Indemnity provisions of the Joint Policy for the components of the KMM-103B Salvage Expenses

and the Insurers are liable to M/G for their respective subscription share for the KMM-103B Salvage Expenses under the Joint Policy.

49. The refusal of the Insurers to pay M/G for the KMM-103B Salvage Expenses was intentional and in bad faith.

WHEREFORE, M/G Transport Services, Inc. demands judgment against Defendants for the KMM-103B Salvage Expenses, together with prejudgment interest, attorneys fees, punitive damages, and costs of suit.

## COUNT 2

### Failure to Pay for KMM-103B Salvage Expenses and Loss of KMM-103B under the Hull and Machinery Coverage

50. M/G incorporates Paragraphs 1-49 of this Complaint by reference.

51. Under the terms of the Sue and Labor Clause of the Joint Policy's Hull & Machinery Coverage, M/G is insured for the KMM-103B Salvage Expenses and the Insurers are liable to M/G for their respective subscription share for the KMM-103B Salvage Expenses under the Joint Policy.

52. M/G is also insured under the Joint Policy for the net loss it sustained when KMM-103B was sold for scrap and the Insurers are liable to M/G for their respective subscription share for the loss of KMM-103B under the Joint Policy.

53. The refusal of the Insurers to pay M/G for the KMM-103B Salvage Expenses and the value of KMM-103B was intentional and in bad faith.

WHEREFORE, M/G Transport Services, LLC demands judgment against Defendants for KMM-103B Salvage Expenses and for the loss it incurred when Barge KMM-103B was sold for scrap, together with prejudgment interest, attorneys fees, punitive damages, and costs of suit.

## COUNT 3

### Failure to Pay for Barge M/G-274 Repair Costs

54. M/G incorporates Paragraphs 1-53 of this Complaint by reference.

55. M/G is insured under the terms of the Joint Policy for the cost of repairing Barge M/G-274 and the Insurers are liable to M/G for their respective subscription share for the Barge M/G-274 repair costs under the Joint Policy.

56. The refusal of the Insurers to pay M/G for the Barge M/G-274 repair costs was intentional and in bad faith.

WHEREFORE, M/G Transport Services, LLC demands judgment against Defendants for the cost of repairing Barge M/G-274, together with prejudgment interest, attorneys fees, punitive damages, and costs of suit.

## COUNT 4

### Failure to Pay for Hurricane Gustav Repair Expenses

57. M/G incorporates Paragraphs 1-56 of this Complaint by reference.

58. M/G is insured under the Joint Policy for the Hurricane Gustav Repair Expenses and the Insurers are liable to M/G for their respective subscription share for the unpaid Hurricane Gustav Repair Expenses under the Joint Policy.

59. The refusal of the Insurers to pay M/G for the unpaid Hurricane Gustav Repair Expenses was intentional and in bad faith.

WHEREFORE, M/G Transport Services, LLC demands judgment against Defendants for the cost of unpaid Hurricane Gustav Repair Expenses, together with prejudgment interest, attorneys fees, punitive damages, and costs of suit.

## COUNT 5

### Failure to Pay for Hurricane Ike Expenses

60. M/G incorporates Paragraphs 1-59 of this Complaint by reference.

61. M/G is insured under the Joint Policy for the Hurricane Ike Expenses and the Insurers are liable to M/G for their respective subscription share for the unpaid Hurricane Ike Expenses under the Joint Policy.

62. The refusal of the Insurers to pay M/G for the unpaid Hurricane Ike Recovery Expenses was intentional and in bad faith.

WHEREFORE, M/G Transport Services, LLC demands judgment against Defendants for the cost of the unpaid Hurricane Ike Recovery Expenses, together with prejudgment interest, attorneys fees, punitive damages, and costs of suit.

## COUNT 6

### Violation of Louisiana Revised Statutes §§ 22:1892 and 1973

63. M/G incorporates Paragraphs 1-62 by reference.

64. M/G has informally and formally requested payment from the Insurers for the damages arising from the loss of KMM-103B, the KMM-103B Salvage Expenses, the M/G-274 Repair Costs, the Hurricane Gustav Repair Expenses, and the Hurricane Ike Recovery Expenses.

65. The Insurers have arbitrarily, capriciously, and without probable cause, refused to pay M/G within prescribed statutory deadlines under Louisiana law for M/G's above described losses under the Joint Policy, despite liability being clear.

66. Such conduct entitles M/G to such statutory damages, attorneys' fees and costs against each Insurer as permitted by La. R. S. 22:1892, La. R.S. 22:1973, and/or other applicable law.

WHEREFORE, M/G Transport Services, LLC demands judgment against Defendants in an amount in excess of $75,000, together with interest and costs of suit.

Dated: December 28, 2009

_____
Dennis A. Watson, Esquire
PA Id. #25500
Grogan Graffam, P.C.
Four Gateway Center – 12th Floor
Pittsburgh, PA 15222
412.553.6300

*Of Counsel*

_____
Michael H. Bagot, Jr., Esquire
LA Id. #26665
Wagner & Bagot, L.L.P.
650 Poydras Street – Suite 2660
New Orleans, LA 70130
504.525.2141